## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARL ROBINSON, | Civil No. 1:20-CV-1171 |
| Plaintiff, | |
| v. | |
| SUPERINTENDENT THERESA DELBALSO, *et al.*, | |
| Defendants. | Judge Jennifer P. Wilson |

## **MEMORANDUM**

On July 9, 2020, self-represented Plaintiff Carl Robinson, commenced this action concerning the alleged interference with his legal mail and medical treatment for an injury to his right hand. (Doc. 1.) Recently Robinson has filed three "amended complaints." (Docs. 15, 18 and 20.) Because of the dissimilarity of claims raised in the original complaint and amended complaints, and the individuals involved, the court will strike the amended complaints from the docket.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Carl Robinson is an inmate housed at SCI-Mahanoy, who at the time of filing his initial complaint lived in a Recovery Treatment Unit ("RTU"). In his complaint, Robinson alleges that corrections staff interfered with his legal mail on four occasions between May to December 19, 2018, resulting in the "loss of [his] right to appeal and losing [his] case in the District Court." (Doc. 1, ¶ 36.) Next, he alleges medical staff have failed to accurately diagnose and treat his

broken right hand or monitor his chronic medical conditions (diabetes, hypertension and cholesterol). (*Id.,* ¶¶ 20–25, ¶ 33.) Finally, Robinson claims an officer approached him "aggressively" on August 10, 2019, leaving him feeling "threatened, confused and PTSD worsened by the encounter." (*Id.,* ¶ 26.)

Robinson names two groups of Defendants. The first group consists of SCI-Mahanoy employees: Superintendent Theresa Delbalso, Deputy Superintendent of Centralized Services ("DSCS") Lori White, Corrections Health Care Administrator ("CHCA") John Steinhart, Mailroom Supervisor Faith Walters, and Sergeant ("Sgt.") Torres. The second group consists of those who provide medical care for inmates at SCI-Mahanoy: Correct Care Solutions ("Correct Care") and Physician Assistant ("PA") Jenna Williams.

On August 13, 2020, Robinson filed a motion for a temporary restraining order seeking to require prison officials "to provide a medically appropriate course of treatment and physical therapy," including an evaluation by a specialist, for Robinson's hand injury. (Doc. 11.)

On August 21 and 28, 2020, Robinson filed two of three amended complaints. (Docs. 15 and 18.) The first two amended complaints are related to each other, but not to the original complaint or the third amended complaint. In the first two amended complaints, Robinson sets forth a failure to protect claim following a November 1, 2019 incident, where he alleges that he was sexually

2

assaulted by another inmate. (Doc. 15, ¶ 7.) He also challenges the April 1, 2020, revocation of his Z code[1] and transfer off the RTU to a "regular population" housing unit. (*Id*., ¶¶ 10, 15.) Robinson claims that staff told him "he has to find a cellmate." (*Id*., ¶ 11.) In May 2020, Robinson requested protective custody rather than accepting a cellmate. When he raised concerns for his safety, Superintendent Mason advised Robinson to discuss his security concerns with the Restricted Housing Unit ("RHU") Lieutenant or Major. (*Id*., ¶ 16.) After refusing a direct order to accept a cellmate, Robinson was placed in the RHU where he was sexually harassed by Corrections Officer ("CO") West. (*Id*., ¶ 18.) Robinson claims prison staff removed his Z Code status in retaliation for filing grievances. (*Id*., ¶ 21.)

The only difference between Robinson's first amended complaint and his second amended complaint is that he named Superintendent Mason as a Defendant in the first amendment and DSCS White as a Defendant in the second. (Docs. 15, 18.) However, Robinson does not mention Superintendent Mason in the second amended complaint. (*Id*.) Aside from DSCS White, Robinson does not mention any of the Defendants named in the original complaint in the first or second amended complaints.

---

[1] A "Z Code" is a housing status given to inmates who, for a variety of reasons, are not given a cellmate or double-celled, i.e., they are single-celled. *See* Pennsylvania Department of Corrections ("DOC") Policy 11.2.1, *Reception and Classification,* Section 5, *Single-Celling ("Z Code") and Double-Celling Housing*, available at *https://www.cor.pa.gov/About%20Us/ Documents/DOC%20Policies/11.02.01%20Reception%20and%20Classification.pdf.* (last visited Sept. 6, 2020).

On August 31, 2020, Robinson filed a third amended complaint. (Doc. 20.) Named as Defendants are Superintendent Delbalso, DSCS White, Dr. Newton, and the Bureau of Health Care Services. (*Id.*) Dr. Newton provides mental health treatment for inmates at SCI-Mahanoy, and is not named in the original complaint. (Docs. 1, 20.) Robinson claims that on March 12, 2020, after reviewing his medical records, he learned he was diagnosed with "phencyclidine–induced psychotic disorder." (Doc. 20, ¶ 5.) He claims he was "not put on notice or treated for this diagnosis." (*Id.*, ¶ 6.) He claims unidentified staff are "fabricating and falsifying [his medical] records willfully and intentionally" in retaliation for his filing of prison grievances and § 1983 lawsuits. (*Id.*, ¶¶ 7, 10.) He asserts an Eighth Amendment claim against Superintendent Delbalso, DSCS White, Dr. Newton and the Bureau of Health Services for failing to maintain accurate medical records. (*Id.*, ¶ 9.) Robinson's third amended complaint does not mention the claims presented in his original complaint or his first two amended complaints.

### DISCUSSION

**A. Rules Governing Amendments and Joinder of Defendants**

The Federal Rules of Civil procedure provide that a party may amend its pleading once as a matter of course within twenty-one (21) days of service of the complaint, or within twenty-one (21) days after the service of a responsive pleading, or a motion filed under Rule 12(b), (e), or (f), whichever is earlier. *See*

Fed. R. Civ. P. 15(a)(1).  In all other circumstances, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

Rule 18(a) of the Federal Rules of Civil Procedure governs the joinder of claims.  Rule 18(a) provides: "A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).

Rule 20 of the Federal Rules of Civil Procedure limits the joinder of defendants.  Rule 20(a)(2) provides:

> *Defendants*.  Persons ... may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A) and (B).  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).  However, the policy behind Rule 20 is not a license to join unrelated claims and

defendants in a single lawsuit.  *See Nicholas v. Heffner*, 228 F. App'x 139, 141 (3d Cir. 2007) (district court did not err in dismissing amended complaint setting forth new action against new defendants with new claims arising out of a set of operative facts unrelated to the factual claims in the original complaint); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) ("[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated claims against different defendants belong in different suits[.]")

Allowing prisoners to improperly join separate and distinct claims against multiple defendants in a single action conflicts with the principles of the Prison Litigation Reform Act ("PLRA"), as it allows inmates to circumvent the PLRA's filing fee requirement as well as the penalties associated with filing frivolous actions.  *See* 28 U.S.C. § 1915(g); *see also Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014).  Instead of joining unrelated claims, a plaintiff's remedy is to file a separate lawsuit.

### B. Robinson's Amended Complaints

Here, Robinson's first and second amended complaints set forth completely different causes of action from his original complaint.  (Docs. 1, 15, 18.)  His failure to protect and Z Code claims are completely unrelated to his medical and mail claims.  Likewise, Robinson's third amended complaint concerning his

6

previously unknown mental health diagnosis is a new claim, unrelated to those presented in his original complaint. He also seeks to add new defendants with his amendment. Even though Robinson has the right to amend his complaint as of right at this point, he may not amend it to set forth a new action against new defendants arising out of different sets of operative facts unrelated to the factual claims in the original complaint. *See Nicholas*, 228 F. App'x at 141. Accordingly, the court will strike Robinson's amended complaints without prejudice, so he may file a separate action concerning those events if desired.

## CONCLUSION

For the above stated reasons, the first, second, and third amended complaints (Docs. 15, 18, 20), which assert new causes of action unrelated to his original complaint, will be stricken from the docket and returned to Plaintiff. An appropriate order will issue.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Court Judge
> Middle District of Pennsylvania

Dated:  September 18, 2020