**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARL ROBINSON, | : | Civil No. 1:20-CV-01171 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT THERESA | : | |
| DELBALSO, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court are cross motions for summary judgment in the above-captioned matter.  (Docs. 143, 147, 148.)  Plaintiff filed the second amended complaint, the operative complaint in this 42 U.S.C. § 1983 action, in September of 2021.  (Doc. 94.)  It raises an interference with mail claim under the First and Fourteenth Amendments against Defendants Delbalso and Walters, a medical negligence claim against Defendants Correct Care Solutions ("CCS"), Steinhardt, Williams, and White,  a retaliation claim under the First Amendment against Defendants CCS, Steinhart, Williams, Delbalso, Walters, and Torres, and a forgery claim against Defendants Delbalso and Walters.  (*Id.*)  After reviewing the briefing, the court will deny Plaintiff's motion for summary judgment and grant Defendants' motions for summary judgment.  The court will enter judgment in favor of Defendants and close the case.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 in July of 2020.  (Doc. 1.)  Plaintiff attempted to amend the complaint numerous times, Docs. 15, 18, 20, 43, 94, and the operative complaint in this action is the second amended complaint filed in September of 2021: Doc. 94.  (*See* Doc. 90.)  The complaint names seven defendants: (1) Correct Care Solutions ("CCS"), the healthcare provider for State Correctional Institution Mahanoy ("SCI-Mahanoy"); (2) Jenna Williams ("Williams"), a physician's assistant employed by the Department of Corrections ("DOC") to provide medical services at SCI-Mahanoy; (3) Theresa Delbalso ("Delbalso"), Superintendent at SCI-Mahanoy; (4) Lori White ("White"), Deputy Superintendent at SCI-Mahanoy; (5) John Steinhart ("Steinhart"), Medical Coordinator employed by the DOC to provide medical services at SCI-Mahanoy; (6) Faith Walters ("Walters") mail room supervisor at SCI-Mahanoy; and (7) Sergeant Torres ("Torres") a correctional officer at SCI-Mahanoy.  (Doc. 94, pp. 3–5.)[1]

The second amended complaint alleges that on August 28, 2018, Plaintiff sent a request to staff member slip to Defendant Walters asking for any "dates" that he may have received (which the court infers is a reference to mail).  (*Id*., p. 6.)  He alleges that Defendant Walters sent him the "dates" May 15, 2018, May 18,

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

2018, and June 5, 2018. (*Id*.) Plaintiff alleges that he never received mail on these dates. (*Id*.) Plaintiff alleges that on an unknown day he sent another request to staff member slip to Defendant Walters asking her to send the signatures showing that he signed for those specific dates. (*Id*.) Plaintiff alleges that he requested the mailroom provide him with copies of any legal mail for those dates. (*Id*.) He alleges that Defendant Walters told him the mailroom no longer keeps copies of legal mail because of inmate privacy. (*Id*.) Plaintiff alleges that he sent another request asking if there were any memos sent to the inmate population regarding "the issue at hand" and he was told that the mailroom is not required to notify anyone. (*Id*.)

Plaintiff alleges that on December 19, 2018, Defendant Walters, acting on the instructions of Defendant Delbalso, returned an order from the Court of Appeals for the Third Circuit that was addressed to Plaintiff back to the United States Postal Service, with a return to sender sticker. (*Id*., p., 7.) Plaintiff alleges that since May of 2018, the prison failed to forward his mail to him resulting in the dismissal of his case and loss of his right to appeal. (*Id*.) He alleges this was due to him "exercising his rights by filing grievances against the mail room." (*Id*.)

Plaintiff alleges that on March 20, 2019, because he was frustrated from being hindered in getting his appeal heard and being retaliated against, he punched a backboard of a universal weight machine in the gym. (*Id*.) He alleges that he

broke his right hand and was given a splint by Defendant Williams along with "a few pain fills." (*Id*.) He states he was not given an MRI, was not transported to an outside hospital, was not given any physical therapy, and was not provided additional pain medication. (*Id*.) Plaintiff states that there is "an informal policy" at SCI-Mahanoy to give low priority to medical needs of all inmates especially "R.T.U." inmates by refusing to provide them with medical care outside the institution unless their medical condition is life threatening. (*Id*.) He alleges that his right hand healed improperly. (*Id*., p. 8.)

Plaintiff alleges that on August 10, 2019, he had an "unwarranted life threatening occurrence" from Defendant Torres inside the sallyport in B-unit. (*Id*.) He states that Plaintiff was approached aggressively by Defendant Torres which made Plaintiff stop in his tracks and preventing Plaintiff from entering the unit. He felt threatened and confused and this incident worsened his posttraumatic stress disorder ("PTSD"). (*Id*.)

Plaintiff alleges that on September 10, 2019, he talked to Defendant Williams about testing his blood sugar, blood pressure, and cholesterol more than every six months, but was told that he did not need his sugar levels checked more often. (*Id*.) He states that on February 12, 2020, his A1C had risen from 7.2 to 10.2 since September of 2019 and he was authorized fingers sticks and scheduled for a return in three months. (*Id*.)

4

Plaintiff repeatedly alleges that that he exhausted his administrative remedies.  (Doc. 94, pp. 5–9.)

Plaintiff filed a motion for summary judgment on June 28, 2022.  (Doc. 143.)  All Defendants filed briefs in opposition on July 12, 2022.  (Docs. 156, 158.)  In response, Plaintiff filed a declaration in support of his motion on July 22, 2022.  (Doc. 161.)

On June 30, 2022, Defendants CCS and Williams filed a motion for summary judgment.  (Doc. 147.)  On July 1, 2022, the remaining Defendants, collectively known as the DOC Defendants, filed  a motion for summary judgment.  (Doc. 148.)  Additionally, both sets of Defendants filed a response to the statement of material facts filed by Plaintiff.  (Docs. 159, 160.)  Plaintiff did not file a response to the Defendants' motions for summary judgment besides the declaration filed in support of his motion for summary judgment.  (Doc. 161.)

The cross motions for summary judgment are now ripe and will be addressed by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at SCI-Mahanoy, located in Schuylkill County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

7

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

Plaintiff's complaint essentially raises four distinct series of events: (1) the alleged interference with the mail; (2) the alleged refusal to treat his right hand injury; (3) the alleged refusal to treat his diabetes; and (4) the alleged threatening behavior by Defendant Torres.  Therefore, the court will summarize the facts pertaining to each series of events as required when addressing each claim individually.  In doing so, the court finds that there is no issue of material fact as to the grievances filed.  Of the documents filed by the parties, the parties have been consistent as to what documents were filed with the DOC, the information the documents have contained, and when such documents were filed.

## A. Judgment Will Be Entered In Favor of Defendants Steinhart and White.

Plaintiff named Defendants Steinhart and White as defendants in this action. (Doc. 94, p. 4.)  However, none of the alleged facts throughout the remainder of the complaint identifies any relevant action taken by either Defendant Steinhart or Defendant White.  (*Id*., pp. 6–8.)  While Plaintiff names Defendant Steinhart and White in his medical negligence claim and Defendant Steinhart in his retaliation claim, he failed to allege facts in support of these claims.  (*Id*., p. 9.)  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, there is no misconduct alleged. Therefore, Plaintiff has failed to state a claim against these two Defendants, and the court will grant the DOC Defendants' motion and enter judgment in favor of Defendants Steinhart and White.

### B. Plaintiff Has Failed To Exhaust His Administrative Remedies For Claims Raised Against Defendant CCS and For Monetary Relief Against Defendant Williams For Failure to Treat His Diabetes.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations. *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted). Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United* States, 904 F.3d 257, 266–67 (3rd Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules)

respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

### 1. Grievances

On March 26, 2019, Plaintiff filed Grievance 794548 regarding Defendant Williams asking to see the x-ray and needing treatment.  (Doc. 145-1, p. 17; Doc. 155-3, p. 1.)  There is no request for monetary relief and no accusations or complaints raised against Defendant CCS.  (*Id.*)  The grievance was denied and appealed up through the final level of appeal before being denied by the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  (Doc. 145-1, pp. 18–22; Doc. 155-3, pp. 2–6.)

On October 24, 2019, Plaintiff filed Grievance 832104 alleging that he needed to be able to check his blood sugar "perpetually" to manage his diabetes.  (Doc. 145-1, p. 23; Doc. 155-4, p. 7.)  There is no request for monetary relief and no accusations or complaints raised against Defendant CCS.  (*Id.*)  The grievance was denied and appealed up through the final level of appeal before being denied by the SOIGA.  (Doc. 145-1, pp. 24–28; Doc. 155-4, pp. 8–12.)

On October 25, 2019 Plaintiff filed Grievance 832103 regarding Defendant Williams alleging he had not received proper care for his right-hand injury and requesting injunctive relief, declarative relief, compensatory damages, and punitive

damages.  (Doc. 145-1, p. 11; Doc. 155-4, p. 1.)  There are no accusations or complaints raised against Defendant CCS.  (*Id*.)  This grievance was denied and appealed to the highest level until it was ultimately denied by the SOIGA.  (Doc. 145-1, pp. 12–16; Doc. 155-4, pp. 2–6.)

### 2.  Claims Against CCS

Here, Plaintiff has failed to name Defendant CCS in any of the grievances he filed with the DOC regarding his right-hand injury and diabetes treatment. Therefore, he has failed to exhaust his administrative remedies as to his claims against Defendant CCS.  Based on this failure to exhaust his administrative remedies, the court will enter judgment in favor of Defendant CCS.

### 3.  Claims Against Defendant Williams

Plaintiff has properly exhausted his administrative remedies as to claims raised against Defendant Williams.  However, he failed to properly request monetary compensation in his grievance that claims of lack of treatment for his diabetes.

Pa. Dept. of Cor. Policy DC-ADM-804 Sec. 1.A.11.d states that "[if] the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."  This court has granted summary judgment in favor of the defendants when a prisoner fails to seek monetary damages in his grievance.  *See Mobley v. Snyder*, No. 1:13-

cv-00772, 2015 WL 5123909, at *8–*9 (M.D. Pa. Sept. 1, 2015) (granting summary judgment in favor of defendants when a prisoner failed to clearly assert a request for monetary compensation in a grievance including allegations of inmate abuse); *Collins v. Walsh*, No. 1:09-cv-1932, 2012 WL 3536803, at *3 (M.D. Pa. Aug. 15, 2012) (granting summary judgment where the plaintiff failed to file a brief in opposition and did not request monetary relief in his initial grievance). "[W]here prison policy requires an inmate who seeks monetary compensation to request that relief in the inmate's initial grievance, failure to do so will bar claims from monetary compensation in federal court." *Camacho v. Beers*, No. 16-1644, 2018 WL 6618410, at *2 (W.D. Pa. Dec. 18, 2018).

The court recognizes that the Third Circuit Court of Appeals has rejected a procedural default claim premised upon an inmate's failure to request monetary relief in his initial grievance because "the grievance policy in effect at that time permitted—but did not require—an inmate to identify the relief sought (including monetary relief) in his grievance." *See Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (citing *Spruill v. Gillis*, 372 F.3d 218, 233–34 (3d Cir. 2004) (DC-ADM 804 at that time stated, "[t]he inmate may include a request for compensation or other legal relief")); *see also Hobson v. Tiller*, No. 1:18-cv-00233-SPB-RAL, 2021 WL 2191282, at *7 (W.D. Pa. May 6, 2021), *report and recommendation adopted*, No. CV 18-233, 2021 WL 2190818 (W.D. Pa. May 31,

12

2021).  However, after the Third Circuit's decision, the Pennsylvania Bureau of Prisons amended its policy, including mandatory language regarding monetary relief, adhering to what was suggested by the Third Circuit in *Spruill.  See Wright*, 729 F. App'x at 227; *see also Hobson*, 2021 WL 2191282, at *7.  In *Wright*, the Third Circuit upheld the district court's determination that "[the plaintiff] procedurally defaulted his claim for money damages by failing to request such relief in his grievance" because the "requirement is now mandatory."  *See Wright*, 729 F. App'x at 227; *see also Hobson*, 2021 WL 2191282, at *7.

When Plaintiff filed Grievance 832104 in October of 2019, he failed to request monetary damages.  This was after the DOC policy was amended to make the request for monetary compensation mandatory in grievances.  Therefore, Defendants have raised an affirmative defense and judgment shall be entered in their favor and against Plaintiff in all claims for monetary relief arising out of Grievance 832104.

### 4.   Judgment Will Be Entered in Favor of Defendant Williams in All Remaining Claims Raised Against Her In the Complaint.

The remining claims against Defendant Williams include a medical negligence claim under Pennsylvania state law and a retaliation claim under the First and Fourteenth Amendments.  (See Doc. 94, p. 9.)

### a.   Medical Negligence

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal*, *D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)).  To establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.  *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint.  Pa. R. Civ. P. 1042.3.  The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the

defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed.  Pa. R. Civ. P. 1042.3(a)(1)–(3).  Failure to file a certificate of merit is fatal to a plaintiff's claim.  Pa. R. Civ. P. 1042.7.

The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim.  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262–65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby*, P.C., 249 F. App'x 938, 944 (3d Cir. 2007).  This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law.  *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury."  *Toogood*, 824 A.2d at 1145.  A very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of

even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

Here, Plaintiff has failed to supply the required certificate of merit within the 60-day time period. Therefore, judgment will be entered in favor of Defendant Williams on Plaintiff's negligence claim.

### b.    Retaliation

First, the court notes that Plaintiff's retaliation claim is properly raised under the First Amendment, not the Fourteenth. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (Retaliation for filing complaints against officers implicates conduct protected by the First Amendment.). Therefore, judgment will be entered in favor of Defendant Williams as to any Fourteenth Amendment claim, and the court will now address the claim under the First Amendment.

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts. *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015). A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell*, 318 F.3d at 530. The

16

filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment. *Fantone*, 780 F.3d at 191.

In the operative complaint, Plaintiff alleges that Defendant Williams' actions of not testing his blood sugar, blood pressure, and cholesterol within a six-month period "were done maliciously and sadistically in retaliation for upholding the disciplinary decision constitutes the Tort under law of Pennsylvania." (Doc. 94, p. 9.) Here, Plaintiff's allegations fail to meet the elements identified in *Rauser*. At most, reading the second amended complaint in its entirety, Plaintiff merely implies that Defendant Williams refused to treat him for diabetes because he filed Grievance 794548 in March of 2019. However, at summary judgment, implications alone are not sufficient.

In the operative complaint, Plaintiff has failed to provide any factual allegations that Grievance 794548 was "a substantial or motivating factor" for Defendant Williams' decision to only test Plaintiff every six months. Additionally, at summary judgment, Plaintiff failed to present any evidence that the filing of Grievance 794548 was "a substantial or motivating factor" for Defendant Williams' treatment decisions. When Plaintiff had the opportunity to present evidence in response to the Defendants' motions for summary judgment, he only addressed the claims of interference with his mail and retaliation claims associated with is mail delivery. (Doc. 161.) Therefore, Plaintiff has both failed to plead

facts in his complaint, but he failed to meet his burden to survive summary

judgment on the retaliation claim against Defendant Williams, and judgment will

be entered in favor of Defedant Williams on the retaliation claim.

### C. Judgment Will Be Entered In Favor of the DOC Defendants in the Mail Interference Claims.

Plaintiff brings claims under the First and Fourteenth Amendments against

Defendants Delbalso and Walters, alleging that they failed to forward a court order

"maliciously and sadistically," denying him access to the court and denying him

due process.  (Doc. 94, pp. 7, 9.)

Plaintiff presents evidence in the form of pages from the incomplete docket

sheet for an unidentified case filed in the Eastern District of Pennsylvania showing

that on December 22, 2020, that court entered an order granting Plaintiff's leave to

proceed *in forma pauperis* and dismissing the complaint for failing to state a claim

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (Doc. 145-1, p. 2.)  The docket shows

that order was mailed to Plaintiff on the same day.  (*Id*.)  On January 4, 2021,

Plaintiff filed a motion to amend a final judgment and a letter on March 11, 2021.

(*Id*.)  Then on July 6, 2021, that court denied Plaintiff's motion to amend the final

judgment.  (*Id*., pp. 2–3.)  Plaintiff also attached a page from the docket of an

unidentified habeas corpus case filed in the Eastern District of Pennsylvania.  (*Id*.,

p. 8.)  This page from the docket shows that an order dated December 19, 2018

was returned with the reason being listed as "Return to sender, refused, unable to

forward, no stamps, envelopes, paper, money orders, checks, or legal papers." (*Id.*)

Plaintiff also presents evidence that on November 11, 2019, he filed Grievance 833616 stating that he had received his docket sheet from the Third Circuit Court of Appeals and the mailroom prohibited him from getting an order from the court and requesting monetary damages.  (*Id.*, p. 5.)  The initial response from SCI-Mahanoy stated that "all legal mail is entered into a system and tracked, it shows that nothing received for you was returned to sender, in fact, it shows that everything that was received for  you was delivered to you and you signed the legal log showing that you received it."  (*Id.*, p. 6.)  Plaintiff appealed this, and the appeal was denied stating that "we document and track to final disposition ALL legal mail that is sent to this institution," and stated that the claim was beyond the 15-day limit for filing grievances.  (*Id.*, pp. 7, 9.)  The DOC response was upheld by the SOIGA in its final determination.  (*Id.*, p. 10.)

On March 27, 2019, Plaintiff filed Grievance 794707 stating that on March 18, 2019, he sent a request to Defendant Walters in the mailroom asking for dates and signatures for legal mail he received, and he alleges that he was told that changes were made in the legal logs, and he was not able to get copies and to keep track of all legal mail.  (*Id.*, p. 31.)  The initial denial states that "inmates do not have to be notified when there is a change in how the mailroom keeps track of your

19

privileged mail," and "[t]he mailroom was able to provide you the copies of the privileged slips that you signed because the inmates each signed a separate page to accept their legal mail." (*Id.*, p. 32.)  Plaintiff appealed this response, which was upheld through the facility manger's appeal level. (*Id.*, pp. 33–34.)

Defendants Delbalso and Walters present complete docket sheets for one case out of the Eastern District of Pennsylvania, case number 2:16-cv-04224-CMR, and the subsequent appeal to the Third Circuit Court of Appeals, case number 19-1059. (Doc. 149-1, pp. 1–13.)  This showed that in case 2:16-cv-04224-CMR on January 10, 2019 that the Eastern District of Pennsylvania's December 19, 2018 order was returned for the following reasons: "Return to sender, refused, unable to forward, no stamps, envelopes, paper, money orders, checks, or legal papers." (*Id.*, p. 7.)  This December 19, 2018 order is identified as follows: order that Petitioner's motion for articulation regarding status of order (Doc. No. 30) is dismissed as improper. (*Id.*, p. 6.)  Plaintiff's notice of appeal in this action was filed on December 19, 2018. (*Id.*)  The case then moved forward to the Third Circuit Court of Appeals. (*Id*, pp. 6–12.)

### 1.  First Amendment

"[P]risoners, by virtue of their incarceration, do not forego their First Amendment right to the use of the mails." *Nixon v. Sec'y Pennsylvania Dep't of Corr.*, 501 F. App'x 176, 177 (3d Cir. 2012) (quoting *Jones v. Brown*, 461 F.3d

353, 358 (3d Cir. 2006)).  An inmate's right to send and receive mail can, however, be restricted for legitimate penological purposes.  *Id.*; *see also Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Courts have held that "[l]egitimate penological objectives exist for opening and examining [prisoners'] non-legal mail." *Higgs v. Suey*, Civil No. 07–5158, 2008 WL 699594, at *6 (D.N.J. Mar. 12, 2008) (citing *Dean v. Johnson*, 381 F. Supp. 495 (D.C. Pa. 1974)) (stating that unlike prisoner's right to correspond with courts or counsel, prisoner's right to mail personal letters to family and friends is not absolute).  However, the opening of legal mail outside the presence of the inmate, implicates the First Amendment.  *See Fontroy v. Beard*, 559 F.3d 173, 174–75 (3d Cir. 2009) (citing *Jones*, 461 F.3d at 355) (holding that "state prisoners have an interest protected by the First Amendment in being present when their incoming legal mail is opened.").

The Third Circuit has "recognized a cause of action to address '[a] state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate', because such a practice 'interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.'"  *Diaz v. Palakovich*, 448 F. App'x. 211, 215 (3d Cir. 2011) (citing *Jones*, 461 F.3d at 359) (reaffirming the holding of *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995)).

21

Allegations that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may also state a First Amendment claim. *McLeod v. Monmouth Cty. Corr. Inst.*, No. CIV.A. 05-4710 (AET), 2006 WL 572346, at *3 (D.N.J. Mar. 8, 2006) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996)); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993); *Thompson v. Hayman*, No. 09-1833, 2011 WL 2652185, at *5 (D.N.J. July 6, 2011) (opening outside of the prisoner's presence, reading, delaying, or stealing a prisoner's legal mail violates a prisoner's First Amendment rights).

Prisoners need not allege or prove any "actual injury" beyond direct injury to their First Amendment right to use the mails. *Taylor v. Oney*, 196 F. App'x. 126, 128 (3d Cir. 2006). However, courts have found that mere isolated incidents of interference without evidence of an improper motive, are insufficient to establish a First Amendment violation. *See, e.g. Nixon v. Sec'y Pa. Dep't of Corr.*, 501 F. App'x 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a first Amendment violation."); *Fuentes v. State of New Jersey Office of Pub. Defs.*, No. CIV.A. 05-3446(FLW), 2006 WL 83108, at *5 (D.N.J. Jan. 11, 2006) ("A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional

22

deprivation.") (citing *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976)).

Defendants' motion for summary judgment focuses on the fact that failure to deliver a single court order to Plaintiff had no impact on his ability to appeal his case. (Doc. 149, pp. 7–8.) However, a plaintiff is not required to show actual injury. *Taylor*, 196 F. App'x. at 128. Despite this, Plaintiff has only been able to demonstrate a single incident of his mail being returned and he has failed to allege, let alone submit evidence of, any improper motive. Therefore, judgment in favor of Defendants is appropriate in the First Amendment mail interference claim.

### 2. Fourteenth Amendment

Plaintiff also alleges that the inference with the mail violated his Fourteenth Amendment rights. (Doc. 94, p. 9.)

The Fourteenth Amendment provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *See* U.S. Const. amend. XIV. Here, Defendants present evidence that Plaintiff timely filed a notice of appeal in the only case in which Plaintiff's mail was returned to the court by SCI-Mahanoy. (Doc. 149-1, pp. 6–14.) In fact, Plaintiff pursued this action all the way to the Supreme Court of the United States. (*Id*., pp. 13-14.) In response, Plaintiff failed to provide any evidence that the returning of the single December 2019 order interfered with his ability to file an appeal in the action.

Therefore, Plaintiff has failed to meet his burden to survive the motion for summary judgment.

### D. Judgment Will Be Entered Against Plaintiff in the Retaliation Claims Against the DOC Defendants.

Plaintiff raises retaliation claims against Defendants Steinhart, Delbalso, and Torres.  (Doc. 91, p. 9.)  Again, the court notes that Plaintiff's retaliation claims are properly raised under the First Amendment, not the Fourteenth Amendment.  *See Mitchell*, 318 F.3d at 530 (Retaliation for filing complaints against officers implicates conduct protected by the First Amendment.). Therefore, judgment will be entered in favor of the DOC Defendants as to any Fourteenth Amendment claim, and the court will now address the claim under the First Amendment.

It is well-settled that prison officials may not retaliate against an inmate because he exercises his right of access to the courts.  *Fantone*, 780 F.3d at 191.  A prisoner asserting a retaliation claim must allege the following elements: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.  *See Rauser*, 241 F.3d at 333; *see also Mitchell*, 318 F.3d at 530.  The filing of a lawsuit or a prison grievance constitutes protected activity under the First Amendment.  *Fantone*, 780 F.3d at 191.

### 1. Defendants Steinhart and Delbalso

Plaintiff alleges that since May of 2018, the prison failed to forward mail to Plaintiff, resulting in the dismissal of his case and loss of his right to appeal, due to him exercising his rights by filing grievances against the mailroom. (Doc. 94, p. 7.) Defendants CCS and Wilson, not the DOC Defendants, have submitted a summary of grievances filed by Plaintiff. This evidence shows Grievances 759534 and 762641were filed against the mailroom, and predate the December of 2018 order that was not forwarded to Plaintiff. (Doc. 155-2, p. 3.)[2] However, Plaintiff failed to provide evidence of these grievances in support of his assertion that the failure to forward the December 2018 order was made in retaliation for his practice of filing grievances. Furthermore, Plaintiff has been unable to provide evidence of interference with his mail other than the single order not forwarded in December of 2018. Therefore, Plaintiff has been unable to produce evidence in support of his claim that Defendants Steinhart and Delbalso retaliated against him for filing grievances against the mailroom.

### 2. Defendant Torres

Plaintiff alleges that on August 10, 2019, he underwent a "life threatening occurrence" from Defendant Torres inside the sallyport inside of B-unit. (Doc. 94,

---

[2] CCS Defendants identify this list of grievances to include all grievances filed by Plaintiff from 2014 to the present. (Doc. 155-2, p. 1.)

p. 8.)  He states that he "was approached aggressively by Defendant Torres which made Plaintiff stop in his tracks preventing Plaintiff from entering unit which left Plaintiff threatened, confused and PTSD worsened by the encounter."  (*Id*.) Plaintiff alleges that this encounter was done in retaliation for filing grievances. (*Id*., p. 9).

Plaintiff alleges that DOC Defendants' actions of denying him access to the courts and unwarranted life threating occurrence were done "maliciously and sadistically in retaliation for upholding the disciplinary decision constitutes the Tort under law of Pennsylvania." (Doc. 94, p. 9.)  Defendants allege that Plaintiff has failed to meet the second element of a retaliation claim.  (Doc. 149, p. 9.) However, the court can resolve this claim without addressing the potential factual dispute as to whether or not Defendant Torres' alleged actions were sufficient to deter a person of ordinary firmness from exercising his constitutional rights. That is because Plaintiff failed to properly plead the third element of a retaliation claim.

The third element of a retaliation claim requires Plaintiff to demonstrate that the constitutionally protected conduct was a substantial or motivating factor for the adverse action.  Here, Plaintiff has failed to establish the required causal connection between his grievances and Defendant Torres' action.  "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the

allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Here, Plaintiff has failed to allege that the grievances were filed against Defendant Torres. This court has repeatedly refused to find a causal connection when the alleged perpetrator of the retaliatory activity was not the subject of the constitutionally protected activity. *See Calloway v. Bauman*, No. 2:20-cv-2337, 2022 WL 4357468, at *9 (M.D. Pa. Sep. 20, 2022) *citing Victor v. Lawler*, 2010 WL 5014555, at *5 (M.D. Pa. Dec. 3, 2010), *aff'd*, 565 F. App'x 126 (3d Cir. 2014); *also citing Evans v. Rozum*, 2009 WL 5064490, at *22 (W.D. Pa. Dec. 17, 2009) ("There is no apparent reason why [the moving defendants] would want to retaliate against Plaintiff for filing a lawsuit against others."); *also citing Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (affirming summary judgment in favor of defendant on plaintiff's claim that he was retaliated against by a defendant who was not the target of his protected activity). Therefore, Plaintiff has failed to plead the third element of a retaliation claim and judgment will be entered in favor of Defendant Torres.

### E. Judgment Will Be Entered in Favor of the DOC Defendants in the Forgery Claims.

Plaintiff alleges that Defendants Delbalso and Walters forged dates and signatures regarding when legal mail was sent to him and that this was done

maliciously and sadistically because Plaintiff requested the mailroom to provide him with dates and signatures.  (Doc. 94, p. 10.)

A "party who relies on fraud or forgery has the burden in the first instance of proving the facts upon which the alleged fraud or forgery is based, and these facts must be established by evidence that is clear, direct, precise, and convincing." *CoActiv Capital Partners, Inc. v. Feathers*, No. 08-5506, 2009 WL 1911673, at *3 (E.D. Pa. July 1, 2009) (quoting *Carlson v. Sherwood*, 206 A.2d 19, 20 (Pa. 1965) (internal quotation marks omitted)).  "Neither a 'bald allegation of forgery' nor 'testimony that [one] cannot remember signing [a document], nor the combination of both' constitutes clear and convincing evidence of forgery."  *Id.* (quoting *Jackson v. Allstate Ins. Co.*, 441 F. Supp. 2d 728, 734 (E.D. Pa. 2006)); *see also Healthcare Servs. Grp., Inc. v. Moreta*, No. 19-2260, 2019 WL 6117353, at *4 (E.D. Pa. Nov. 15, 2019).

Here, Plaintiff has failed to introduce any evidence of forgery beyond his initial allegations made in the second amended complaint.  Therefore, this claim cannot survive summary judgment.

**CONCLUSION**

For the foregoing reasons, the court will grant Defendants' motions for summary judgment and deny Plaintiff's motion for summary judgment.  Judgment will be entered in favor of Defendants on all claims.

A separate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 31, 2023